I represent Mr. and Mrs. Morgan, who are trustees of their trust in the appellants in this action. The fundamental overall question in this appeal is whether the District Court erred in determining on summary judgment that the Appley Chicago Title Insurance Company did not have an obligation to defend Mr. and Mrs. Morgan in an underlying civil suit concluded several years ago on the island of Kauai. That is, to defend certain claims made against Mr. and Mrs. Morgan. Before getting into too much detail, we believe that there are two very fundamental errors in the analysis of how both the District Court and Chicago Title are approaching the issues in this case. Fundamental issue one, under both this Court's decision in Chicago Title Insurance Company v. American Resources back in 1987 and the Derry Road case in the Hawaii Supreme Court decided in the year 2000, we both extensively decided those, there are two rules that were effectively overlooked. There may have been some lip service paid in effect overlooked. Principle one is that insurance policies are to be interpreted according to what they say. What the words in the particular policy means. Not some other policy with different language, not what some other court said about some other policy that had different language. What does this policy say? And the second part, and this is particularly emphasized in Derry Road, is that the labels attached to policies don't control what they say. It's their actual policy terms and provisions. So when we get generalities that aren't rooted in policy language about what, quote, title insurance policies supposedly do or don't do and cover and don't cover, that's really not relevant. What is relevant is what this particular policy says. And in the context of this case, and when we're dealing with the exceptions in that, there are a couple of assertions of this type of labeling which we believe is fundamentally wrong and cause the court to go into error. There's an assertion, for example, that title policies never create a duty to defend claims which are based upon unrecorded documents. Now we know that one has to be wrong because if you look at the this circuit decided that there was a duty to defend against the claim of an unrecorded mortgage that was made in that case. But more importantly, there is a blanket exclusion of all claims based upon unrecorded documents only if a policy says that there is a blanket exclusion of all claims made upon unrecorded documents. That isn't what this policy says. The second one is another glittering generality. Title insurance policies don't protect, excuse me, don't create a duty to defend claims made by parties in possession of real property. If that's what the policy says, that's true. But that isn't what this policy says. And that is an error that was made not only in Chicago Title's opposition but also in District Judge Gilmour's decision where she essentially jumps to the conclusion that because there was a policy, there was a claim being made by someone who was in possession of the property, that ended the issue. And she didn't walk through the facts or the policy language there. The second is how do you determine, the second overall big mistake is the approach a court is supposed to take in determining whether there is a duty to defend. And under Derry Road, Thai Court Title, virtually every relevant case, a duty to defend exists if there are allegations against the policyholder which at least arguably come within the policy's coverage provisions as liberally construed. So you look at the policy's coverage provisions. Is there something that arguably comes within them? If so, there's a duty to defend. Now, sometimes that's the end of the story. However, there are also instances such as this one where the insurance carrier said yes or whatever, maybe not yes, but where the insurance carrier said, aha, but there are exceptions or exclusions that apply or that might apply. Then what do you do? And that's step two of the analysis. First of all, do you determine if it's within the coverage provisions? If it is, then you go on to step two, if an exception or exclusion has been raised. In those instances, the exclusions are construed to be construed under the case law narrowly and in favor of the policyholder. It stands to reason these are contracts of adhesion. These are contracts of, in the case of insurance policies in Hawaii, this is policy language that's been approved by the state insurance commissioner or subject to the approval. But if there's an exclusion, the exclusion gets narrowly construed. And on top of that, if there are disputed factual issues as to the underlying events, they are to be resolved in determining whether there's a duty to defend in favor of policy coverage. So in this instance, if there was a dispute as to the underlying facts applicable to whether there was an exclusion or exception applied, that had to be resolved in favor of the Morgans for determining whether there was a duty to defend. Now in this particular case, as we've shown, what happened in the underlying case is there were not only disputed issues as to which relate to the acceptance and exclusions, but when it got in the state court case, those exclusions were, all those facts were resolved in the Morgans' favor in the state court action. So there was not only a duty to defend, that duty to defend never walked away because of anything that happened there. In fact, what the ultimate result in the state court action showed that there was a duty to defend all along that there were disputed facts, they are resolved against the policyholder and against coverage. And in doing that, they look at the high court title and somehow interpret it that way. All we can say is that we believe that is dead wrong. We believe that what happened in doing that analysis is they got the parties crossed and switched the policyholder, got the identity of the parties messed up. And we also said that it would make no sense whatsoever in any insurance policy to be excluding ambiguities against the policyholder rather than in favor of them. Now, what happened in this particular case? In 1992, Mr. and Mrs. Morgan loaned $300,000 to an Edgar Kerr. In return for that, he gave them a promissory note. He also promised to pay it back. He also gave them a mortgage on certain property on the island of Kauai, a residential property. Before you get into the details, one of the problems I have is you apply all the black letter law to what happened here. And the insured has the initial obligation to give notice to the company of a potentially covered claim. And I take it that that at least initially was the April 24th, 1994 letter? Yes, it was. The one Mr. Quattro gave to the... Yes. And looking at that, I don't see that there's any notice there that there were, given what Mr. Quattro said, that there's any potentially covered claim out there. Because the dates he gives are too late. Mr. Quattro was not in the part of the document you're referring to. He was just explaining why Ms. DiMichele was sued in the first place. She was sued because she had record title of the property and she was a necessary party. He wasn't giving an explanation as to why there was a claim. And there was no requirement in that policy that he spell out exactly why they thought there was coverage and why they were tendering their claim. He said, there's a potential claim here. Here it is. And this was describing DiMichele's identity rather than what that particular claim was. He was giving notice. So in your view, that triggered the company's duty to investigate. Yes. In our view, it did trigger the company's duty to investigate. If there were more detailed requirements of the policy as to what the company meant, what the company wanted in the form of a notice, then there's arguably... The Morgans would have been required to comply with those. If you look in the policy, there is no notice. All it says is, give us a notice. It doesn't say what the notice is supposed to comprise. There's no form. It doesn't require copies of pleadings. It doesn't say anything about what they're supposed to do. So had they investigated, they would have found that DiMichele's claim preceded the issue of the policy. Certainly. Okay. Thank you. Yeah. I mean, there's no... If you go through DiMichele's claim, she wasn't claiming under the document. And it would have been frivolous for her to try to do so. She wasn't claiming under the recorded documents she had. She had documents recorded after the Morgans' mortgage. I mean, those documents, and this should be recorded after the Morgans' mortgage. They also recognized the Morgans' mortgage and said it had priority. So she certainly wasn't claiming under those. In any event, they got the... The loan occurred at $300,000. They got a promissory note back. They got the mortgage, and they also got the title policy from Chicago Title. A few months later, as I just mentioned, Kerr transferred record title of the property to Ms. DiMichele via documents, and it's correct. They were recorded afterwards. Those documents which were recorded afterwards, both a written agreement of sale and a deed, both said that DiMichele was taking title subject to the Morgans' mortgage. A few months after that, Kerr defaulted in making payments due under the note. The Morgans' hired an attorney on Kauai, a local attorney named Richard Quado. He brought suit against the Morgans, excuse me, against Kerr for not paying, and he brought suit against DiMichele. She was included in there simply because she held record title of the property under the deed and mortgage. She was a necessary party. And after all, if she was going to foreclose, she was the person who was going to be taken out. She was not only a necessary defendant, she was a very, very necessary defendant in those terms. Kerr defaulted in responding to the state court complaint. DiMichele, however, hired counsel and filed a response in which she disputed the validity of the Morgans' mortgage, although she had agreed to take title subject to it. At that time, the notice letter was given as noted, and the Morgans there was no real response to the notice letter. The state court action went on for several more years after that. The Morgans eventually defeated every challenge DiMichele made to their mortgage, were allowed to foreclose. DiMichele appealed after the sale, and there was a settlement after that. Basically, the Morgans were tired of repaying attorney's fees and were running out of funds to do that. After that matter was finished, the Morgans' new counsel, namely me, renewed their claim with Chicago title. They weren't asking for anything they had to pay to DiMichele, because they didn't have to pay anything to DiMichele. What they were asking for was their defense costs incurred in the action. After that claim was denied, and there was a whole series of letters that are in the record, went to the district court, went up with a decided unsummary judgment, claims that the Morgans raised both claims of bad faith and breach of the insurance contract and bad faith. Judge Gilmer denied both of those unsummary judgments against both of those claims, while at the same time denying the Morgans for a partial summary judgment as a liability on the insurance contract. In terms of the insurance policy, what did the policy provide? In this case, did the defense in place by DiMichele within the action in opposing the foreclosure and trying to hold on to her property, which attacked the Morgans' mortgage, did those raise claims which the Chicago title was entitled to defend? Under the policy, and this is on page 104 of the executive record, Chicago title was required to pay cost fees and expenses incurred in defense of the title or the lien of the mortgage as insured. The title as insured is spelled out on 100 page 108 of the excerpt. The title was incurred. The title of the property was Mr. Kerr, the person who they loaned the money to and who had record title on the date. The lien of the insured mortgage was specified as being their mortgage. And the things that were insured against were title being vested in someone other than Kerr, a defect in Kerr's title, or the invalidity or unenforceability of their mortgage. Now, if you go to DiMichele's answer in the circuit court case, where the excerpts started on page 116, those are the only kind of claims DiMichele raised in the circuit court. All the Morgans were claiming that they were entitled to foreclose their mortgage, which was on her property. Now, they weren't seeking damages from her. All they were trying to do was enforce their mortgage. Therefore, the only issue between them and her was whether they could enforce the mortgage. Her defenses were all to the point of, no, the mortgage is unenforceable for one reason or another. Failure to state a claim denies the existence of all documents. Those are defenses that she somehow had bought the property and was in possession before the mortgage is Morgan's mortgage. Didn't say the Morgans knew anything about that. Third defense is just that she bought the property and was in possession. The fourth defense was that the Morgans knew or should have known that she constructed the house and the property and was in possession. Again, doesn't say that the Morgans knew anything about ownership. And it's in the alternative, known or should have known. The Morgans allegedly had noticed that she had legal, equitable, and possessory interest. Fifth defense, doesn't say what those legal, equitable, and possessory interests are. Possessory interest, obviously, is compatible with being a tenant. Sixth defense, the mortgage is void because Currie conveyed the property prior to the Morgan's mortgage and all sorts of things. I'm not going to afford mortgagees, releases, blah, blah, blah, went on to 18 affirmative defenses. Clearly, because the validity of the mortgage and Currie's title at the time the mortgage was issued were in effect, the coverage provisions of the policy applied. The only questions were whether the mortgage was valid. And I say I don't have too much time remaining. There were three exceptions or exclusions involved. I'm trying to save a minute or two for rebuttal. One was of easements, liens, and encumbrances or claims thereof not shown by the public record. This was a claim of title. It wasn't a claim of an easement. It wasn't a claim of a lien. It wasn't a claim of an encumbrance. So that shouldn't apply. And if you look at the title itself specific, the language in there is the way that that policy was phrased, which was a predecessor form policy, that case, too, indicates that the title is something different than possession. And we think that's a matter of real estate law. Any claim or matter not shown by public records which should be ascertained or by making inquiry of the There were 18 affirmative defenses, and some were based on some facts and others. But the idea that making inquiry of parties in possession, that arguably could be a constructive notice, but that was disputed by Mr. and Mrs. Morgan, and the court on Kauai ultimately found, in fact, that they did not have actual or constructive notice, that there was an indication that Demichelli had been holding herself out as a tenant. So even if inquiry would have been made of her, that she would not have made a claim that she had a title, that she was only a tenant. In fact, the time she said she was a tenant was when a predecessor lender was investigating. The Morgans' $300,000 would replace a prior loan to Kerr. The previous loan to Kerr, the facts shown in the record below, and as alleged by the Morgans, showed that Demichelli had said, no, I'm a tenant. I'm a tenant. Go through the property. She showed the inspector, she showed the appraiser through the property claim that she was a tenant. So you can't just assume that she would have told them that she had a claim that she was an owner, because in fact, the circuit court held that there was no such claim. Defects known and not recorded, but known to the insured claimant and not disclosed. The question, did the Morgans know of it? Demichelli said they knew or should have known. Morgans disputed that. That issue was in dispute throughout the case over there, and again, at the very end of the case, the Morgans prevailed on that issue. So here we have not only a case where it would be wrong to assume that the disputed fact should be assumed against the Morgans, but when you make that assumption, you're assuming, if the court makes that assumption, the court is assuming a falsehood, because at the end of it, when all things were said and done in the case on Kauai, the court concluded in a summary judgment where all the facts are in, that there was no factual basis for all of the reasons that Chicago Title is now arguing that there should have been an exclusion. I have nothing further I'd like to say. I'm going to take my, whatever I have remaining, which doesn't appear to be very much. That's fine. Mr. Hulbert. May it please the Court, good morning. My name is Neil Hulbert. I'm here on behalf of the Chicago Title Insurance Company. This case, as the district court noted, came up in a slightly backwards fashion, in the sense that the insured, the plaintiffs, filed the foreclosure case initially, and DiMasselli answered the foreclosure case in state court, and the question is, what were DiMasselli's claims? She was named as a party to that foreclosure case initially, because she had a recorded agreement of sale, and a deed in satisfaction of the agreement of sale, both of which were recorded after the insured mortgage. Now, let's look at what DiMasselli claimed, and distill it to its essence. The, basically, DiMasselli responded to the complaint by saying, yes, I do claim an interest in the property. And she said, I claim an interest in three ways. Now, in her answer, she only identified two, and then the summary judgment, response to the summary judgment, she identified a third. In the answer to the complaint, she acknowledged she was claiming under the agreement of sale, and the deed, under the agreement of sale, and the deed in satisfaction of the mortgage, that she had possession of the property prior to the date of the insured mortgage. More specifically, she claimed that she had built a house on the premises, and that she had been in possession of the property, and I quote here, actual, open, notorious, and exclusive possession prior to the date of the execution of the mortgage. That's what she says in her answer. Her conclusion is, I own the property. But the facts upon which she bases her conclusion are either the agreement of sale and the deed, or the claim of prior possession. In response to the motion for summary judgment, and my recollection is she filed two memos in response to that, she raised yet a third argument, or a third factual basis for her claim of owning the property, and that was on the basis of an unrecorded DROA, deposit receipt offer and acceptance. I don't know how familiar the court is with those types of documents. Basically, in Hawaii, a DROA is a purchase and sale agreement. It is not a conveyance document. It is simply a document by which the buyer offers to buy the property, and the seller agrees to the terms. It differs from an agreement of sale slightly, agreed to. Well, maybe in the mainland they have earnest money receipts, which can clutter up titles even though they don't convey anything. Exactly. And then the next step is, or the next potential would be an agreement of sale, which is generally for a longer duration, traditionally three years, sometimes longer. It's really a mechanism of financing a conveyance, where the seller sells, the buyer agrees to pay, after the conclusion. How does Chicago title claim any virtue under that document? Under the unrecorded DROA? Yeah. The unrecorded DROA is accepted from coverage as being an unrecorded encumbrance. That wasn't what encumbered the mortgage, the insured mortgage, which was recorded. If you look at the state of record, at the time of the insured mortgage, neither the deed in satisfaction wasn't recorded because it was recorded after. The DROA was never recorded. So it is not a recorded encumbrance, I will give you that. But it is a claim of encumbrance, and it's not of record. Why is it a claim of encumbrance? Because it actually, if I understand it correctly, it conveys equitable beneficial title to the property, so that a subsequent conveyance of title would be inconsistent with it, arguably, and not consistent with it as an encumbrance is. That is true as to an agreement of sale, which the Hawaii Supreme Court has held. And the Hawaii Supreme Court held just after that, that an agreement of sale, it meant when it talked about an agreement of sale, it talked about the same thing as a DROA. I think you have that reversed, but I follow it. Well, there were two cases that came down, and I'm blanking on the names of them at the moment, but in one of them, it said what you just said, and then the next one said, when we talked about agreement of sale, it's the same. Yes, and they talked about DROAs being generally of shorter duration and that type of thing, but it can create a claim which is a type of encumbrance. They did not go so far as to say that an agreement of sale was an equitable conversion. They did say that it's possible that it could be under given circumstances. If it is not crystal clear that it is an encumbrance, then given the wide obligation to defend, why didn't you have the duty to defend? On that specific point, the exclusion is, and we are entitled to look to the exclusions, the exclusion says that under Schedule B Part 1, this policy does not insure against loss or damage by reason of the following exceptions. I think I said exclusion. It's an exception, Your Honor. Paragraph 3, easements, liens, or encumbrances or claims thereof which are not shown by the public record. If the DROA could be an encumbrance if it is recorded, then it would be a claim of encumbrance if it is not recorded. Well, yeah, but the opposite is equally true. I mean, if it's not clear, if it's not well settled law that it is an encumbrance or a claim of encumbrance, a claim of title, I should think, not a claim of encumbrance. So if it's not a claim of an encumbrance, clearly, then isn't it ambiguous enough to trigger the duty to defend? It is not. Why not? And it is not because if you look at the specific claim, what Demoselli says is that it's said was, I have a DROA. It's not recorded. I am entitled to own the property. If you look at the exclusion, excuse me, I keep saying exclusion. They're exceptions. If you look at the specific exception, it is accepted from coverage because it is a claim of encumbrance. Well, you're It can't be a claim of an Let me, I'm just trying to be Demoselli's advocate here to clarify the point. You're claiming it's a claim of encumbrance. Let us suppose I'm claiming it's a claim of title. I don't think, I think that's a distinction without a difference. Well, I don't because an encumbrance isn't title. An encumbrance An encumbrance is consistent with the conveyance of title. Yes, it allows you It goes subject to an encumbrance. That's true. That is true. If you had a valid DROA under, it is arguable at least, that that conveyed title, which would not be an interest in the property, which would not be consistent with a subsequent conveyance of title. I disagree. I can convey property that I have, that I am the purchaser of under an agreement of sale. I can convey that property validly to another party. It would be encumbered by and subject to the agreement of sale, but I am capable of conveying whatever title I have subject to. And what's the best case that you've got for that proposition? The proposition that I can convey subject to? Yeah. I'll have to take a quick minute if you don't mind, Your Honor. I don't have these off the top of my head today. You make me feel better. Neither do I. But I think it's an important question. All right. If you give me just a minute, Your Honor. All right. This is, without taking forever, it is addressed in pages 26 through 30, excuse me, 31 of our answering brief, Your Honor. Well, you've got to make an assumption that I'm really very familiar with the brief, and I've done as best I can, or to be more accurate, the best my law clerk could do, to come up with Hawaii or other jurisdictions talking about the legal significance of DROAs. And the best we can produce is Jenkins and its companion case, which is the one that I'm ranking on. I am, too, Your Honor. Jenkins is the agreement of sale case. Yeah, but then the next case is the one that says that it's the same, the functional equivalent of a DROA. And it just goes back to my point again. If it's so tough for us sitting here right now to say for sure what the effect of that DROA is, then doesn't that put it into the gray land where there is an obligation at least to defend? I guess my dispute with your question is that it is in a gray area. I don't see the same grayness that apparently Your Honor sees. It seems to me that, and I know I'm saying it again, that it is at best a claim of encumbrance. It is not recorded. It is accepted from coverage. We may be chasing rabbits on this DROA because the trial judge didn't consider that in her decision. She said she was relying on that Exhibit B, the exemption for non-coverage of Paragraph 2, not Paragraph 3. And she says that she's pointing to the person in possession from whom an inquiry could have been made. And we've already heard that the person in possession might have been a little bit mendacious about that. So what virtue does the insurer get out of that? Indeed, the claim under the unrecorded DROA would be accepted from coverage either under the unrecorded claim of encumbrance or under the party in possession. The party in possession exception in the title insurance policy, as we've laid out, follows the general law. When you take title to property, you don't take title free and clear of the claims that someone  has. That's true, I think, of common law. You're on notice of something if there's somebody living there and has a ten-year-old narrow patch on your property. You're going to make some questions. But that isn't this case. This lady could have been a tenant. Half the people in Hawaii over a long period of time were renting the houses they lived in. So what does that do for the title insurance company when there's a recorded mortgage out there? What it does is at the time the insured mortgage gets recorded, the policy says we are not going to cover you for claims about people who are in possession of the property prior to the recording of the mortgage. In this instance, in her answer, she says not only was she in possession, she says, I built this house. She also claims that the Morgans knew that. It's an interesting aside, and it could bring into play another exclusion. Well, the reason people buy title insurance is to avoid the he said, she said problems. But that's not what the policy says. The policy says you're not covered for any claims that somebody who's in possession of the property at the time your mortgage goes on record, if you had made inquiry of them, could have responded. Now, there's no dispute that Dina Selly consistently claimed that she was in possession of the property. There's no dispute about that. There's no dispute in the underlying case as far as I know, there was never any dispute that Dina Selly claimed she built the house. There was a dispute about how much the Morgans knew about that. I concede that. But I'm not relying on their knowledge. I mean, it is one of the exclusions, and to that extent it may apply. But really what was going on is that Dina Selly was saying, I'm in possession of this claim. She couldn't quite make it because she couldn't satisfy the 20 years. But other than that, it's similar to an adverse possession type claim. That is accepted from coverage under the policy. What the Morgans would like to say is, oh, it should be covered because she was claiming title. There's nothing that says that the title insurer has to ignore the factual basis upon which the claim is being made. The factual basis that Dina Selly made her claim of title or ownership or defective mortgage was that she was in possession of the property. That was the basis of her claim. She built the house. She was in possession of it. And whether or not she's a tenant is wholly irrelevant. She's in possession of. Whether she's in possession because she's a tenant or whether she's in possession because she claims to have purchased from her doesn't make a difference. Either one of those kinds of claims by Dina Selly is accepted from coverage. Let me go back. You get the basis for her claim out of the answer? At the time the notice letter was given, her answer and, as I recall, two memoranda in the notice letter. It's really, I mean, am I reading the right animal? I don't know. Because it looks to me like, you know, she's claiming an interest in the subject property, legal, equitable, and possessory that predates the mortgage. I mean, it isn't just that she had built a house. I mean, I don't even see building a house in the answer. It may be.  I believe it is, Your Honor. I may just be missing it. It's in the fourth defense, which appears at page eight of our brief. Plaintiff's knew or should have known that Dina Selly had built a single family dwelling on the property and that she had actual, open, notorious, and exclusive possession of the property. Okay. I'm sorry. I'm missing that page. But in the fifth and sixth and seventh defenses, she's broadening that considerably. And, I mean, I think part of the problem here is that Chicago title just basically said, rather than taking any steps to find out. First quick answer. She comes to a number of conclusions about the factual basis. The factual basis is always, I was in possession of the property. And she then says, and therefore I have title, or I own the property, or Kerr didn't have the power to mortgage it. She says a lot of things, but it all stems from her claim, her factual claim, of being in possession of the property. Now let me go to your comment, if I might, about Chicago title's response. The initial claim letter states, and I disagree with counsel as to what it says, and it's in the record. It's at page 130 in the excerpts. And what it says is, he's giving notice of a potential claim against title. A potential claim against title. And then he says, an answer to the foreclosure complaint was filed by Dina Selly, claiming an interest in the property by reason of an agreement of sale. Entered into, recorded on such and such a date. That's what he tells Chicago title. He says, there's a potential claim here. And it's based on Dina Selly claiming an agreement of sale that's dated after your mortgage. Chicago title gets that letter, and is it a surprise that they look at it and say, okay, he's telling us there's a potential claim. Obviously it's not on the agreement of sale because that's after the insured mortgage. And he's only saying it's a potential claim. Maybe he's being careful about it. That it's not actually a claim that's covered by the policy. Okay, when there's a claim that's covered by the policy, I guess he'll tell us. The answer is they don't do anything until five years later when Mr. Jacobson writes his letter. During which time, by the way, the facts really haven't changed. Dina Selly consistently made the same claim about the agreement of sale, about being in possession, and about the unrecorded DROA. Those things never changed. The circuit court looked at it and made certain rulings about it, made certain decisions as to who knew what when. But her basis never changed. And frankly, when Mr. Jacobson wrote his letter and we looked at it again, we in fact went through the entire record and looked at the subsequent motions for summary judgment and Dina Selly's claims, and they weren't different. They were the same claims. So even though at the time, if you take the notice letter as a notice of claim, even at that time, all you get to look at are the answer and the memos in opposition. We went beyond that and looked at everything that occurred after that time, all still the same, still deniable for the same reasons. I see my time is up. I thank you. We ask the court to affirm the district court's orders and the judgment. Thank you. All right. Thank you, Mr. Follett. Mr. Jacobson? Very briefly and very quickly. On the question of whether this business of a claim of title versus a claim of encumbrance, what matters is that Dina Selly was claiming that under her DROA, she had title. There was an obligate, and that's what she was claiming. Otherwise, the whole defense would have been pointless. Not only that, but as made clear in the Tigard title case, whether Dina Selly's claim of title under DROA was meritorious is irrelevant because there's an obligation to defend claims that can be frivolous, that can be claims that can be met simple by denial, that can be claims that can be met by affirmative defenses. The point is, you buy title insurance to have a defense against claims. As long as the claim was a title under the DROA that existed before, that allegedly existed before the mortgage, that's all you need to have. The bit about the policy excluding everything, all claims by a party in possession, that isn't what the policy says. It could have, but it doesn't. What it says, claims that can be ascertained by inquiry of the persons in possession. There's no blanket exception. Other policies have that, and they've cited cases with blanket provisions. This policy doesn't have a blanket provision. The third exclusion they're relying on is an exclusion of adverse claims not known to the insured claimant. We now have a concession in oral argument that maybe the Morgans knew, maybe they didn't know. Given the applicable law, none of those exceptions can possibly apply because those facts have to be resolved in the Morgan's favor. Thank you, Mr. Jacobson. Counsel, the matter just argued will be submitted.
judges: Goodwin, Rymer, T.G. Nelson